IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY R. THOMPSON, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>JANE ELLEN THOMPSON WATSON )<br>and DUANE WATSON, )<br>    Defendants. ) | C.A. No. 1:20-cv-101<br><br>RE: Motion to Dismiss<br>ECF No. 8 |

**MEMORANDUM OPINION**

U.S. D.J. Susan Paradise Baxter

### I.     RELEVANT PROCEDURAL HISTORY

This lawsuit arises out of a tale as old as time: a family dispute between siblings about money. This is the third legal action to grow out of the ongoing dispute between a brother and sister. This action focuses on whether an action filed in Orphans' Court constitutes the tortious act of an abuse of process under Pennsylvania law. This action was originally filed by Stanley Thompson in the Venango County Court of Common Pleas. Defendants Jane Ellen Thompson Watson (the sister of Stanley) and her husband Duane Watson removed the action from the Court of Common Pleas to this federal court based on diversity jurisdiction.[1]

---

[1] The Notice of Removal reflects that Stanley Thompson is a citizen of the state of Texas and the Watsons are citizens of the Commonwealth of Pennsylvania. ECF No. 1, ¶ ¶ 8-9.

1

Following the removal of this action to this federal court, Mr. Thompson filed an amended complaint. Mr. Thompson brings two separate legal claims under state law: 1) a common law claim of abuse of process against Defendant Ms. Thompson Watson and 2) a civil conspiracy claim against both Defendants. Mr. Thompson seeks compensatory and punitive damages.

Defendants seek dismissal of this case based on Plaintiff's failure to state a claim upon which relief can be granted. ECF No. 8. Plaintiff has opposed the motion [ECF No. 10] and Defendants have filed a reply brief [ECF No. 11]. The motion to dismiss has been fully briefed and is ripe for disposition by this Court.

## II.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) must be viewed in the light most favorable to the plaintiff and the complaint's well-pleaded allegations must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed under Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 *citing* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004). In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Smith v. Sullivan*, 2008 WL 482469, at *1 (D. Del. Feb. 19, 2008) *quoting Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not

impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234, *quoting Twombly*, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the *Twombly/Iqbal* line of cases. To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the court must follow three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011) *quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Plaintiff has attached several exhibits to his pleading. The use of these exhibits by this Court[2] does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. *Pryor v. National Collegiate Athletic Assoc.*, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment.").

---

[2] Of the exhibits attached to the amended complaint, only the trust documents have been reviewed at this time.

Both parties have attached multiple exhibits to their briefs in support of and in opposition to the motion to dismiss. Such exhibits may require conversion of this motion to dismiss into a motion for summary judgment. Thus, they have not been reviewed or considered.

### III.   THE FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT

#### A.  Relevant History and Background

Plaintiff Stanley Thompson and Defendant Jane Ellen Thompson Watson are two of the four children of Sylvester and Margery Thompson. In 1985, Sylvester Thompson established a trust for each of his four children ("the 1985 Trusts"). Stanley Thompson and John Burkhiser, Esquire were named as co-trustees of each individual trust. Attorney Burkhiser died in 1991. Stanley Thompson, "with the agreement of his siblings, never undertook his appointment as co-trustee" or as sole surviving trustee. He never took possession or exercised any control over the assets of each of the 1985 Trusts. All financial decisions "were made and implemented exclusively by the respective Sibling beneficiary." ECF No. 7, ¶ 8.

In 2004, the parents and their four adult children agreed to acquire and operate a cattle ranch in Texas. The parents and all four 1985 Trusts formed two companies (VIT Ranch, L.P. and VIT Cattle Company, LLC) that then purchased real estate and cattle in Texas.

In 2005, Devonian, an oil and gas company affiliated with the Thompson family[3], sold gas wells for forty-five million dollars. Devonian then issued equal shares of stock and dividends of almost eight million dollars to each of the four 1985 Trusts. Each of the four 1985 Trusts then contributed over one million dollars to the Texas companies.

---

[3] Although the amended complaint is vague as to the parameters of the relationship between Devonian and members of the Thompson family, it does identify Stanley Thompson as the Chief Operating Officer of Devonian. ECF No. 7, ¶ 22.

In 2009, the parents amended and restated the 1985 Trusts "to conform to the Parents [sic] intent that the assets could not be sold nor devolve to anyone outside the Thompson bloodline." *Id*. at ¶ 16. These are the so-called "Restated Trusts." Each of the four individual Restated Trusts nominated the named individual beneficiary and Stanley Thompson as co-trustees. In other words, Ms. Thompson Watson's trust named Ms. Thompson Watson and Stanley Thompson as co-trustees of the Jane Thompson Watson trust. However, at a meeting with both parents and all four siblings, after objections from the siblings, Stanley verbally agreed to "expressly disclaim his nomination as co-trustee." *Id*. at ¶¶ 19-20.

Eight years later, Jane Thompson Watson expressed her desire (by letter to Stanley Thompson) to withdraw from the Texas companies and Devonian and have them buy out her interests. *Id*. at ¶ 23. Then, Stanley Thompson advised Jane Thompson Watson that a buy-out was prohibited by the organizational documents and that there was insufficient cash to do so.

In March 2018, Jane Thompson Watson filed a Praecipe for Writ of Summons in the Venango County Court of Common Pleas.[4] Following the issuance of the Writ of Summons by the Court of Common Pleas, Stanley Thompson's counsel advised Jane Thompson Watson's counsel that the requested buy-out of her interests was prohibited by each of the Family Companies' organizational documents as well as by applicable statutes. Jane Thompson Watson

---

[4] The Writ of Summons that was issued by the Court of Common Pleas named the following as Defendants to the impending action: Stanley Thompson, an adult individual; VI T Ranch, a Texas limited partnership; VI T Cattle Company, a Texas limited liability company; VI T Investments, a Texas limited liability company; Devonian Resources, Inc., a Pennsylvania corporation; Stanley Thompson, in his capacity as Manager of VI T Cattle Company; Stanley Thompson, in his capacity as President and Member of VI T Investments; Stanley Thompson, in his capacity as director of Devonian Resources, Inc., a Pennsylvania corporation; Stanley Thompson, in his capacity as Trustee of the Jane Ellen Thompson Watson Trust, a Pennsylvania trust; and Stanley Thompson, in his capacity as Voting Trustee of the Voting Trust Agreement dated Jan 14, 2009, a Pennsylvania Trust. ECF No. 7-5, page 9.

took no further action in the civil action in Venango County beyond the initial service of the Writ of Summons. *Id*. at ¶ 30. Plaintiff alleges that his sister "abandoned the civil action when she became aware that she had no legal grounds to force a buy-out in an action at law." *Id*. at ¶ 32.[5]

### B. The Orphans' Court Action

Six months later, after allegedly abandoning the action in the Court of Common Pleas, Jane Thompson Watson filed a "Petition for Citation" in the Orphans' Court of Venango County. *Id*. at ¶ 33. It is this Orphans' Court action that provides the factual basis upon which Stanley Thompson's abuse of process claim is based.

Stanley Thompson alleges that his sister brought this action for the "improper purpose of pressuring [him] to cause the Companies to buy-out her interests, notwithstanding that she knew she had no valid legal grounds to force such a buy-out." *Id*. at ¶ 34. In order to further "her illicit purpose," Jane Thompson Watson demanded that Stanley Thompson file an accounting of the financial activities of her trust (the "Trust Accounting"). *Id*. at ¶ 35. Jane Thompson Watson also demanded an accounting from Stanley Thompson in his capacity as presiding officer of each of the Family Companies of the financial activities of each (the "Family Companies Accounting"). *Id*. at ¶ 38.

Finally, Plaintiff alleges that Duane Watson, the husband of Jane Thompson Watson, has a substantial interest in his wife's efforts to obtain a buy-out and has participated with and encouraged her in her efforts.

At the time of the filing of the amended complaint, the Orphans' Court action had not come to a final resolution.

---

[5] The amended complaint provides no further factual allegations as to the status of this litigation.

6

## IV. THE ABUSE OF PROCESS CLAIM AGAINST MS. WATSON THOMPSON

To state a claim for abuse of process, the plaintiff must allege that the defendant: "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Fouad v. Milton Hershey Sch. & Sch. Tr.,* 2020 WL 5775018, at *8 (M.D. Pa. Sept. 28, 2020) *quoting Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. 1993).

The tort of abuse of process focuses on a party's behavior *during* litigation, even where the underlying action has a legitimate basis. *Westminster Am. Ins. Co. v. Spruce 1530, LLC*, 2020 WL 3288193, at *7 (E.D. Pa. 2020), *aff'd*, 2021 WL 1043086 (3d Cir. Mar. 18, 2021). Generally, to recover under a theory of abuse of process, a plaintiff must show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 304 (3d Cir. 2003) *citing Hart v. O'Malley,* 647 A.2d 542, 551 (1994). A "perversion" of legal process occurs when a party uses the process "primarily to accomplish a purpose for which the process was not designed." *Id. quoting Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila.,* 154 A.2d 585, 587 (1959).

As alleged, Stanley Thompson has failed to state a claim for abuse of process. Stanley Thompson alleges that the Orphans' Court action, and, in particular, his sister's demand for a Trust Accounting, is an abuse of legal process because Jane Thompson Watson knew that he had not acted as a trustee. He also alleges that Jane Thompson Watson's demand for the Family Companies Accounting is an abuse of process because she had a statutory right[6] to such without

---

[6] Plaintiff does not identify the state statute under which Jane Thompson Watson could have demanded the accounting.

resorting to the Orphans' Court. ECF No. 7, ¶ 38. No specific harm has been pled from the Orphans' Court action.

Although Stanley Thompson alleges that Jane Thompson Watson's conduct is an "intentional and outrageous perversion of the proceedings in Orphans Court," such a statement is a bald legal conclusion not entitled to the assumption of truth. *See Burtch*, 662 F.3d at 221. Stanley Thompson has not provided sufficient factual allegations to support his position that his sister perverted the otherwise legal process in the Orphans' Court action, a process that may be ongoing.

In his opposition brief, Stanley Thompson lists the "abusive procedural maneuvers" taken by Jane Thompson Watson in the Orphans' Court action. He claims that these "meritless" maneuvers[7], have protracted the proceedings, so much so that there has been no judicial resolution over a jurisdictional issue. Stanley Thompson explains that because of the Orphans' Court action, he faces costs in defending the action, as well as mental distress. These claims of costs and mental anguish, and their concomitant pleading requirements, are nowhere found in the amended complaint and are not appropriately raised for the first time in an opposition brief. An opposition brief is not a pleading and cannot rehabilitate pleading deficiencies in a complaint.

The motion to dismiss will be granted.

---

[7] Even in his opposition brief, Plaintiff has not fully explained how each of Defendant's "maneuvers" is without merit under state law. Although some of the filings from the Orphans' Court case are attached as exhibits to Stanley Thompson's brief, this Court is not required to review such briefs in an effort to determine whether those legal proceedings are meritless. In fact, as they are not part of the Amended Complaint, the Court will not review them at all.

## V.  THE CIVIL CONSPIRACY CLAIM

Under Pennsylvania law, a complaint for civil conspiracy must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuit of a common purpose, and (3) actual legal damage. *Douris v. Schweiker*, 229 F. Supp. 2d at 404 (E.D. Pa. 2002) *citing McKeeman v. Corestates Bank,* 751 A.2d 655, 659 (Pa.Super.2000). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Id.*

Because Plaintiff has failed to state a claim of abuse of process, his claim for conspiracy to commit abuse of process also fails to state a claim. The motion to dismiss will be granted in this regard.

## VI.  AMENDMENT

Plaintiff will be allowed twenty days in which to file a Second Amended Complaint. *See* Fed.R.Civ.P. 15.

An appropriate Order follows this Memorandum Opinion.