IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY R. THOMPSON, | ) | |
|     Plaintiff, | ) | C.A. No. 1:20-cv-101 |
| | ) | |
| v. | ) | |
| | ) | RE: Motion to Dismiss the Second |
| | ) |      Amended Complaint [15] |
| JANE ELLEN THOMPSON WATSON | ) | |
| and DUANE WATSON, | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

U.S. D.J. Susan Paradise Baxter

Pending before this Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. ECF No. 15.

I.    **RELEVANT PROCEDURAL HISTORY**

This action focuses on whether an action filed in Orphans' Court constitutes the tortious act of an abuse of process under Pennsylvania law. This action was originally filed by Stanley Thompson in the Venango County Court of Common Pleas. Defendants Jane Ellen Thompson Watson (the sister of Plaintiff Stanley) and her husband Duane Watson removed the action from the Court of Common Pleas to this federal court based on diversity jurisdiction.[1]

Following the removal of this action to this federal court, Mr. Thompson filed an amended complaint bringing two separate legal claims under state law: 1) a common law claim of abuse of process against Defendant Ms. Thompson Watson and 2) a civil conspiracy claim

---

[1] The Notice of Removal reflects that Stanley Thompson is a citizen of the state of Texas and the Watsons are citizens of the Commonwealth of Pennsylvania. ECF No. 1, ¶ ¶ 8-9.

1

against both Defendants. Defendants sought dismissal of this case based on Plaintiff's failure to state a claim upon which relief can be granted. ECF No. 8. This Court granted that motion but allowed Plaintiff to file a second amended complaint. ECF No. 12; ECF No. 13.

Plaintiff filed the Second Amended Complaint, again raising the same two claims but providing additional factual allegations. ECF No. 14. Defendants have again moved to dismiss [ECF No. 15] and Plaintiff has filed a brief in opposition [ECF No. 17]. The motion has been fully briefed and is ripe for disposition by this Court.

## II.     STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) must be viewed in the light most favorable to the plaintiff and the complaint's well-pleaded allegations must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed under Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 *citing* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004). In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Smith v. Sullivan*, 2008 WL 482469, at *1 (D. Del. Feb. 19, 2008) *quoting Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough

facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234, *quoting Twombly*, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the *Twombly/Iqbal* line of cases. To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the court must follow three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011) *quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached to the complaint, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Plaintiff has attached several exhibits to his pleading. The use of these exhibits by this Court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. *Pryor v. National Collegiate Athletic Assoc.*, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to a Federal Rule of Civil Procedure 56 motion for summary judgment.").

Both parties have attached exhibits to their briefs in support of and in opposition to the motion to dismiss. Such exhibits may require conversion of this motion to dismiss into a motion for summary judgment. Thus, they have not been reviewed or considered.

### III. THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

#### A. Relevant History and Background

Plaintiff Stanley Thompson and Defendant Jane Ellen Thompson Watson are two of the four children of Sylvester and Margery Thompson. In 1985, Sylvester Thompson established a trust for each of his four children ("the 1985 Trusts"). Stanley Thompson and John Burkhiser, Esquire were named as co-trustees of each of the individual 1985 Trusts. Attorney Burkhiser died in 1991. Stanley Thompson, "with the agreement of his siblings, never undertook his appointment as co-trustee" or as sole surviving trustee. He never exercised any control over the assets of any of the 1985 Trusts.

In 2004, the parents and their four adult children agreed to acquire and operate a cattle ranch in Texas. The parents and all four 1985 Trusts formed two companies (VIT Ranch, L.P. and VIT Cattle Company, LLC) that then purchased real estate and cattle in Texas.

In 2005, Devonian, an oil and gas company affiliated with the Thompson family, sold gas wells for forty-five million dollars. Devonian then issued equal shares of stock and dividends of almost eight million dollars to each of the four 1985 Trusts. Each of the four 1985 Trusts then contributed over one million dollars to the Texas companies.

In 2009, the parents amended and restated the 1985 Trusts "to conform to the Parents [sic] intent that the assets could not be sold nor devolve to anyone outside the Thompson bloodline." *Id*. at ¶ 16. These are the so-called "Restated Trusts." Each of the four individual Restated Trusts nominated the named individual beneficiary and Stanley Thompson as co-trustees. In other words, Ms. Thompson Watson's trust named Ms. Thompson Watson and Stanley Thompson as co-trustees of the Jane Thompson Watson Restated Trust. However, at a

meeting with both parents and all four siblings, after objections from the siblings, Stanley verbally agreed to "expressly disclaim his nomination as co-trustee." *Id*. at ¶¶ 19-20.

Eight years later, Jane Thompson Watson expressed her desire (by letter to Stanley Thompson) to withdraw from the Texas companies and Devonian and have them buy out her interests. *Id*. at ¶ 23. Then, Stanley Thompson advised Jane Thompson Watson that a buy-out was prohibited by the organizational documents and that there was insufficient cash to do so. Jane Thompson Watson's counsel continued to contact Stanley seeking the buy-out of Jane's interests. Twice counsel's letters in this regard threatened litigation.

In March 2018, Jane Thompson Watson filed a Praecipe for Writ of Summons in the Venango County Court of Common Pleas. Following the issuance of the Writ of Summons by the Court of Common Pleas, Stanley Thompson's counsel advised Jane Thompson Watson's counsel that the requested buy-out of her interests was prohibited by each of the Family Companies' organizational documents as well as by applicable statutes. Jane Thompson Watson took no further action in the civil action in Venango County beyond the initial service of the Writ of Summons. *Id*. at ¶¶ 28-29. Plaintiff alleges that his sister "abandoned the civil action when she became aware that she had no legal grounds to force a buy-out in an action at law." *Id*. at ¶ 31.

### B. The Orphans' Court Action

Six months later, after allegedly abandoning the action in the Court of Common Pleas, Jane Thompson Watson filed a "Petition for Citation" in the Orphans' Court of Venango County. *Id*. at ¶ 32. It is this Orphans' Court action itself, as well as some of the procedural maneuvers undertaken therein, that provides the factual basis upon which Stanley Thompson's abuse of process claim is based.

5

Stanley Thompson alleges that his sister brought this action for the "improper purpose of pressuring [him] to cause the Companies to buy-out her interests, notwithstanding that she knew she had no valid legal grounds to force such a buy-out." *Id*. at ¶ 34. Plaintiff alleges that Jane Thompson Watson's demand for a Trust Accounting was "merely a pretext" to pressure Stanley to arrange the requested buy-out. *Id*. at ¶ 35. Furthermore, Stanley Thompson alleges that during the continuing course of those Orphans Court proceedings, Jane has "improperly utilized … multiple procedural devices designed to protract that action for the purpose of pressuring Stanley to accede to her demand that she be bought out of the Family Companies, a purpose for which n [sic] Orphans Court proceeding was not designed…" *Id*. at ¶ 53. Stanley complains that this constitutes "a perversion of the lawful purpose of the Orphans Court proceedings invoked by Jane." *Id*. at ¶ 54.

Finally, Plaintiff alleges that Duane Watson, as the husband of Jane Thompson Watson, has a substantial interest in his wife's efforts to obtain a buy-out and has participated with, encouraged her, and conspired with her in her efforts to prosecute the proceedings in the Orphans Court. *Id*. at ¶ ¶ 65-66.

### IV.     THE ABUSE OF PROCESS CLAIM AGAINST MS. WATSON THOMPSON

At common law, the "tort of abuse of process is defined as the perversion of legal process after it has begun 'primarily to accomplish a purpose for which it is not designed.'" *Ciollli v. Iravani*, 625 F.Supp.2d 276, 296 (E.D. Pa. Mar. 31, 2009) *quoting Werner v. Plater-Zyberk*, 799 A/2d 776, 785 (Pa. Super. Ct. 2002). To state a claim for abuse of process, the plaintiff must allege that the defendant: "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to

the plaintiff." *Poteat v. Lydon*, 2022 WL 79631, at *3 (E.D. Pa. Jan. 7, 2022) *citing EMC Outdoor, LLC v. Stuart*, 2018 WL 3208155, at *3 (E.D. Pa. June 28, 2018).

The tort of abuse of process focuses on a party's behavior *during* litigation, even where the underlying action has a legitimate basis. *Westminster Am. Ins. Co. v. Spruce 1530, LLC*, 2020 WL 3288193, at *7 (E.D. Pa. 2020), *aff'd*, 2021 WL 1043086 (3d Cir. Mar. 18, 2021). Generally, to recover under a theory of abuse of process, a plaintiff must show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 304 (3d Cir. 2003) *citing Hart v. O'Malley,* 647 A.2d 542, 551 (1994). A "perversion" of legal process occurs when a party uses the process "primarily to accomplish a purpose for which the process was not designed." *Id. quoting Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila.,*154 A.2d 585, 587 (1959).

As alleged, Stanley Thompson states a claim for abuse of process against his sister. Stanley Thompson alleges that his sister initiated and continues to prosecute the Orphans' Court action in such a way as to pressure him to buy her out (a purpose for which such an action was not designed) and that her legal actions in this regard have caused him harm by way of legal fees. The motion to dismiss will be denied.

V.     THE CIVIL CONSPIRACY CLAIM

Under Pennsylvania law, a complaint for civil conspiracy must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuit of a common

purpose, and (3) actual legal damage. *Douris v. Schweiker*, 229 F. Supp. 2d at 404 (E.D. Pa. 2002) *citing McKeeman v. Corestates Bank,* 751 A.2d 655, 659 (Pa.Super. 2000).

At this Count, Plaintiff alleges that Duane Watson has urged Jane Thompson Watson to demand the buy-out and that he has "participated with Jane in all substantive and strategic decisions made in connection with the … prosecution of … the Orphans Court Action." ECF No. 14, ¶ 64. While it will ultimately be Plaintiff's burden to prove these allegations of conspiracy, the allegations are sufficient at this point to withstand a motion to dismiss.

Finally, whether Plaintiff will be able to recover punitive damages and attorney fees is a matter best left for another day as any argument in this regard is premature. An appropriate Order follows this Memorandum Opinion. Next, this case will proceed through the discovery process, if it has not begun already. An Initial Case Management conference will be scheduled by separate Order.